379 P.2d 788

**John G. BOGGS, Plaintiff-Appellee,**

**v.**

**D & L CONSTRUCTION COMPANY, a corporation, Employer, and Continental Casualty Company, Insurer, Defendants-Appellants.**

**No. 7202.**

Supreme Court of New Mexico.

March 13, 1963.

LaFel E. Oman, Las Cruces, for appellants.

W. C. Whatley, R. E. Riordan, Las Cruces, for appellee.

CARMODY, Justice.

The employer appeals from a judgment granting total permanent disability to a workmen's compensation claimant.

No question is raised with respect to the accident, nor the fact that claimant is entitled to some compensation. The basic difficulty and claim of error is that, inasmuch as the claimant suffered a claimed scheduled injury, the court erred in considering loss of wage-earning ability.

The trial court made the following findings:

"5. That as a natural and direct result of the accident, Plaintiff suffered a fracture of both condyles of the right tibia."

"7. That Plaintiff is not qualified by training to perform any type of labor except that of carpenter or of a common laborer."

"8. That as a result of the accidental injury Plaintiff suffers from pain in the knee and other parts of the body and as a consequence thereof loses sleep, has trouble walking and has on occasion fallen."

"12. That the accidental injury suffered by the Plaintiff resulted in a fifty percent loss of use of the right leg and in an entire loss of the Plaintiff's wage earning ability."

The testimony is clear that the injury was to the claimant's knee, and any disability to his body, as a whole, was a direct result of this injury. Claimant's own testimony is to this effect, although he and his wife testified to the pain which he suffered.

Prior to the amendment to the workmen's compensation statute in 1959, on numerous occasions we considered questions relating to scheduled injuries and their effect or non-effect on general bodily impairment. See Lipe v. Bradbury, 1945, 49 N.M. 4, 154 P.2d 1000; Helms v. New Mexico Ore Processing Co., 1946, 50 N.M. 243, 175 P.2d 395; Reck v. Robert E. McKee General Contractors, 1955, 59 N.M. 492, 287 P.2d 61; Seay v. Lea County Sand and Gravel Co., 1956, 60 N.M. 399, 292 P.2d 93; Hamilton v. Doty, 1958, 65 N.M. 270, 335 P.2d 1067; Lee v. United States Fidelity & Guaranty Co., 1960, 66 N.M. 351, 348 P.2d 271; Rhodes v. Cottle Construction Co., 1960, 68 N.M. 18, 357 P.2d 672, and Hamilton v. Doty, 1962 N.M., 379 P.2d 69. This, however, is the first case to reach us necessitating a construction of the new statute, being §§ 59–10–18.2, 59–10–18.3, and 59–10–18.4, N.M.S.A., 1953 Comp. Sections 59–10–18.2 and 59–10–18.3 provided for total disability and partial disability, and

clarified the statutes theretofore existing. In this connection, § 59–10–12.1, N.M.S.A., 1953 Comp., defined disability, total disability, and partial disability. Section 59–10–18.4 was, in part, a re-enactment of the so-called scheduled-injury section. However, certain language was added, which did not appear in the prior enactments, so that now the scheduled-injury section attempts to provide compensation not only for the loss of specific body members, but the loss of use thereof. The legislature also included in this same section a provision that the court would be given discretion to award enlarged compensation benefits in case of actual amputation, where there is substantial evidence to support a finding that, because of the workmen's advanced age, lack of education, or lack of training, he will be disabled for a longer time than specified in the schedule. It is to be noted that the legislature made this exception only in the case of actual amputation, and not where there was mere loss of use, either totally or partially.

It would seem that in almost any case of the loss of, or loss of use of, a limb, particularly a leg, a person would have some difficulty and an interference with the efficiency of the other parts of the body. We recognize that our statute does not provide that the scheduled benefits are exclusive, and there are cases where such loss, or loss of use, has been shown to extend to other parts of the body. See Hamilton v. Doty, 1958, 65 N.M. 270, 335 P.2d 1067, and Reck v. Robert E. McKee General Contractors, supra. But merely because there is some incidental effect on the remainder of the body, and perhaps, unfortunately, that the workman is unable to obtain and retain employment, cannot allow us to ignore the legislative direction. There must have been some reason for the legislature to have put the scheduled-injury section into the statute. 2 Larson's Workmen's Compensation Law, § 58.10, discusses the nature of schedule benefits. The reason for this type of benefit is explained as follows:

"This is not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law—that benefits relate to loss of earning capacity and not to physical injury as such. The basic theory remains the same; the only difference is that the effect on earning capacity is a conclusively presumed one, based on observed probabilities in many similar cases, instead of a specifically proved one, based on the individual's actual wage-loss experience. * * *"

Any other construction of the scheduled-injury section would make it a nullity, particularly in those cases of loss, or loss of use, of arms or legs, by a laborer or one who works with his hands or feet. We give to the workmen's compensation act a liberal construction in favor of the

laborer, but still we must construe the act in a reasonable manner, and not in such a way as would abrogate certain portions of the statute to the preference of other portions thereof. The only reasonable construction, giving full effect to all parts of the statute, is that the schedule injury section is exclusive, unless there is proof of separate and distinct impairment to other parts of the body in addition to the disability resulting from the injury to the scheduled member.

In the instant case, quite obviously the court was sympathetic to the claimant, as are we; but this being a scheduled injury, the question of the loss of wage-earning ability was not present. The only finding of the court which in any manner tends to show that there is any impairment beyond the injury to the scheduled member is that part of finding No. 8 to the effect that the claimant suffers pain in other parts of the body and, as a consequence, loses sleep. We do not believe this is a sufficient finding of general bodily impairment which extends the disability beyond that provided for by the schedule. See, Lipe v. Bradbury, supra; Lee v. United States Fidelity & Guaranty Co., supra; Coker v. Armco Drainage & Metal Products Co., 1951, 192 Tenn. 10, 236 S.W.2d 980; Smith v. Industrial Commission of Arizona, 1950, 69 Ariz. 399, 214 P.2d 797; Lappinen v. Union Ore Co., 1947, 224 Minn. 395, 29 N.W.2d 8; and Texas Employers' Ins. Ass'n v. Brownlee, 1953, 152 Tex. 247, 256 S.W.2d 76. The fact that this unfortunate claimant has trouble walking, and on occasion has fallen, must, under the testimony, relate solely to the injury to the knee. Any seeming injustice is legislative in nature and it is not for the court to attempt to rectify it by decision.

Thus, the trial court was in error in granting total permanent disability, and, on the contrary, it should have restricted its award to the scheduled injury of 150 weeks at the rate of fifty per cent disability to the scheduled member for that period.

The trial court found that an offer was made to settle the case prior to the time it was filed, but that the plaintiff refused the same. The amount of the offer was more than the claimant was entitled to receive, and therefore, in view of our disposition of the case, the claimant is not entitled to attorney's fees.

The cause will be reversed and remanded to the trial court, with direction to set aside its former judgment and render judgment in conformity herewith. It is so ordered.

CHAVEZ and NOBLE, JJ., concur.

MOISE, J., having tried the case below, did not participate.